# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-01830-SCT

*SERGIO EDUARDO SANDOVAL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2019 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| TRIAL COURT ATTORNEYS: | NESHONDRIA DEQUANDRA ELLERBY |
| | MICHAEL GLEN DYKES |
| | JUSTIN MICHAEL LOVORN |
| | ANGEL MYERS McILRATH |
| | JIM L. DAVIS, III |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/15/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    Sergio Sandoval was convicted on two counts of touching a child for lustful purposes and one count of sexual battery and was sentenced to fifteen years for each count of touching and thirty years for sexual battery, all to run concurrently. Sandoval only appeals the trial court's ruling that he was competent to stand trial. We find that the trial court did not err by

finding Sandoval competent.

## FACTS AND PROCEDURAL HISTORY

¶2.    Sandoval was indicted for four counts (counts one, two, three, and four) of touching a child for lustful purposes and one count (count five) of sexual battery of an eight-year-old second-grade girl.[1] Sandoval's initial trial began on February 6, 2017. The State presented a multitude of witnesses in support of obtaining a conviction during the first day of trial. However, on day two, Sandoval apparently collapsed upon entering the courthouse. He was taken by ambulance to Singing River Hospital. He was examined by Benjamin Hudson, M.D., an emergency-room physician. Several tests were conducted. Hudson diagnosed Sandoval as having had a panic attack and prescribed a non-narcotic medication for a stress-related headache. Sandoval was released.

¶3.    Later that day, Sandoval returned to the courthouse without restrictions. Sandoval then moved for a mistrial, claiming he was physically and mentally unable to proceed. The State responded that the circumstances did not present a manifest necessity for a mistrial.

> At this point, the State's position is that I don't think it even arises to the point where it needs to be continued until tomorrow. The medical records are clear that what his diagnosis is, is essentially a stress-related headache. The doctors have seen him. . . . In the diagnosis, it specifically states that it's affecting his physical condition, not his mental condition. They ran a gamut of tests on him and he is fine.

---

[1] Because the specific facts of the charged crimes are not pertinent to Sandoval's appeal of the trial court's finding him to be competent to stand trial, we will not recite the entire factual history or trial testimony. Briefly, Sandoval was a bus driver for Oak Park Elementary School. The victim reported that, over a three-week period, Sandoval rubbed and touched her vagina. On October 6, 2014, he inserted his fingers in her vagina. That night, the victim reported the abuse to her father, who reported the crime to the Ocean Springs Police Department.

2

. . . I understand that he is probably under a lot of stress. He's facing a potential life sentence in the Mississippi Department of Corrections. At this point we feel like he's malingering and that we should be able to proceed.

¶4. Before any action was taken by the trial judge, the court adjourned for the day. Sandoval returned to Singing River. He again was examined by Hudson, who had concerns that Sandoval was malingering. After consultation with two other medical doctors, a hospitalist and psychiatrist, Hudson agreed that it was not necessary to admit Sandoval. Displeased with Hudson's decision, Sandoval refused to leave the hospital until arrangements had been made by his attorney for an evaluation by Stefan Massong, Ph.D., a clinical psychologist. Sandoval was examined later that evening by Massong.

¶5. The third morning of trial, the trial court conducted a hearing to determine if Sandoval should have additional evaluation to determine his competence to stand trial. The State called Hudson, who evaluated Sandoval twice the day before. Hudson testified that he treated Sandoval for a panic attack and declined to admit Sandoval after he returned to the ER.

¶6. The State then called Beverly Cubley, R.N.-B.C, a board-certified registered psychiatric nurse, who also serves as the Crisis Intervention Program Coordinator at Singing River. Cubley testified that, when she questioned Sandoval, he did not respond appropriately. She believed he was intentionally withholding his responses. Cubley testified that Sandoval's actions were consistent with malingering based on past diagnoses.

¶7. On behalf of Sandoval, Massong testified that he had interviewed Sandoval the evening before. He opined Sandoval was in a very fragile physical state and that he was confused and disoriented. Massong also testified that he had a difficult time communicating

3

with Sandoval.

> I couldn't come to a conclusion. His psychiatric status was so fragile and was so discombobulated that I really couldn't do the formal assessment. . . . I couldn't do the competency evaluation because he could not participate.
>
> . . . [M]y conclusion was . . . if I can't get him to participate in the competency evaluation . . . probably you're not going to get him to participate as a client in the courtroom.

Massong opined that Sandoval should be hospitalized. In addition to Massong, Sandoval's wife, son, and son-in-law were called to testify on his behalf. The trial court ordered Sandoval be evaluated to determine whether he was competent to stand trial and declared a mistrial.

¶8. An order was entered pursuant to Rule 9.06 of the Uniform Rules of Circuit and County Court Practice.[2] The trial court found

> there is reasonable ground to believe that the Defendant is incompetent to stand trial and does therefore order that the Defendant undergo a mental evaluation by Dr. Beverly S. Smallwood, to be conducted as soon as practical, and, if deemed necessary and appropriate, admission and treatment at the Mississippi State Hospital at Whitfield, Mississippi.

On February 24, 2017, Smallwood opined that Sandoval "would not be capable of fully participating with his attorney in the legal process." She recommended that Sandoval be evaluated and treated at the Mississippi State Hospital.

¶9. The trial court entered another order on March 27, 2017, transferring Sandoval to the Forensic Service Department of Mississippi State Hospital (Whitfield) to undergo a mental

---

[2] Sandoval's first trial occurred before the July 1, 2017, adoption of the Mississippi Rules of Criminal Procedure. However, after their adoption, these Rules governed the questions of Sandoval's competency. *See* MRCrP 12.

evaluation "for the purpose of evaluating [] whether or not he has a factual as well as rational understanding of the nature and object of the legal proceedings against him, and has the ability reasonably to assist his attorney in the preparation of his defense." Dr. R.M. Storer, a clinical and forensic psychologist, interviewed Sandoval on November 16, 2017. He determined that Sandoval had feigned impairments and that Sandoval's failure to cooperate by responding genuinely precluded Storer from making an ultimate determination.

¶10.    On February 16, 2018, the trial court entered a third order for mental evaluation and treatment, ordering that Sandoval be transferred to the Forensic Service Department of the Mississippi State Hospital "to conduct the examination of Defendant, Sergio Eduardo Sandoval, as the Defendant cannot be examined on an outpatient basis and the commitment of the Defendant for examination is indispensable to a clinically valid diagnosis and report." Sandoval was seen by Dr. Christine Collins, a forensic psychologist, and Dr. Reb McMichael, a forensic psychiatrist who is chief of services at Whitfield. Sandoval also underwent psychological testing, and a CT head scan was also performed. Collins and McMichael opined that, although Sandoval exhibited memory impairments, he "does not have a mental disease or defect that would impair his ability to understand factual information related to criminal legal proceedings, and rationally apply this information." Collins and McMichael were unanimous in their judgment that Sandoval was competent to proceed to trial.

¶11.    Following their evaluations, the trial court conducted a competency hearing pursuant to Mississippi Rule of Criminal Procedure 12.5. Dr. Collins, an expert in the field of forensic

5

psychology, testified that she had examined Sandoval at Whitfield while he was there for fifty-two days and had reviewed all prior relevant medical records. Collins testified:

> It is my opinion to a reasonable degree of psychological certainty that Mr. Sandoval does not have a mental disease or defect that would impair his ability to rationally communicate with his attorney to prepare a defense in his case. And he does not have a mental disease or defect that would impair his ability to understand factually or rationally the nature and object of the legal proceedings against him. There is also no mental disease or defect that would impair his ability to recall relevant facts or to testify in his own defense, if appropriate.

Collins opined that Sandoval was competent to stand trial. Collins further opined that Sandoval was "malingering so that he is exaggerating and/or feigning cognitive impairments."

¶12. Collins testified that the Whitfield staff considered multiple diseases, including PTSD, conversion disorder, anxiety disorder, depression, and malingering. Sandoval questioned Collins about dissociative amnesia, the "inability to recall important autobiographical information that, one, should be successfully stored in the memory and, two, ordinarily would be readily remembered," and she testified that she did not consider that specific diagnosis because his symptoms were inconsistent with that diagnosis.

¶13. McMichael offered that

> Mr. Sandoval is able to perceive and understand his current legal situation, to confer rationally with his defense counsel, that he can recall relevant facts, and that he could testify if called upon to do so.
>
> It's my opinion that Mr. Sandoval is competent to stand trial. I think that he may have some problems with his memory. And the problem with assessing those problems is that when Dr. Storer and Dr. Collins attempted to assess his memory, he feigned his memory deficits. So it's - he's almost 70 -- it's very likely that his memory is not what it once was. When we go to try to

6

assess how impaired his memory is and he clearly exaggerates his memory impairment, then it's really hard to get an accurate assessment of what he could remember if he was cooperative with the attempts to assess that.

McMichael testified that he considered a diagnosis of dissociative amnesia but could not fully assess it because of Sandoval's behavior.

[H]e obviously malingered on an instrument specifically designed to assess malingered memory deficits. He was given the instrument on multiple occasions. He malingered. So you can't follow up with that with other memory instruments because you already know that he's not giving you reliable data.

McMichael also testified that, even if the trial court were to order Sandoval to return to Whitfield to undergo additional testing to rule out dissociative amnesia, it would be futile because of Sandoval's uncooperative behavior.

¶14. After McMichael's testimony, the State rested. Sandoval did not call any witnesses or offer any evidence to rebut the conclusions of Collins and McMichael. The trial court questioned whether defense counsel had requested that any doctor specifically evaluate Sandoval for dissociative amnesia, and at that time, counsel requested that the judge order yet another evaluation. However, the trial court noted that numerous doctors had evaluated Sandoval, and none had found him to be incompetent. While earlier witnesses had questions as to competency, the Whitfield staff found him to be competent.

¶15. The trial court found Sandoval competent to stand trial. Sandoval proceeded to trial. The jury found Sandoval not guilty of counts one and two and guilty of counts three, four, and five. He was sentenced to serve a term of fifteen years for counts three and four and a term of thirty years for count five, with all three counts to run concurrently.

¶16. Sandoval moved for a new trial, arguing, *inter alia*, that he was not competent. The

7

trial court denied the motion, and Sandoval appealed, challenging only the trial court's competency finding.

## ANALYSIS

¶17. This Court "will reverse a trial court's competency determination only if it is 'manifestly against the overwhelming weight of the evidence.'" ***Dickerson v. State***, 175 So. 3d 8, 15 (Miss. 2015) (quoting ***Hearn v. State***, 3 So. 3d 722, 728 (Miss. 2008)).

> There is a presumption of mental competency. In order to be deemed mentally competent, a defendant must have the ability to perceive and understand the nature of the proceedings, to communicate rationally with the defendant's attorney about the case, to recall relevant facts, and to testify in the defendant's own defense, if appropriate. The presence of a mental illness, defect, or disability alone is not grounds for finding a defendant incompetent to stand trial. If as a result of mental illness, defect, or disability, a defendant lacks mental competency, then the defendant shall not be tried, convicted, or sentenced for a criminal offense.

MRCrP 12.1. If a trial court "has reasonable grounds to believe that the defendant is mentally incompetent, the court shall order the defendant to submit to a mental examination." MRCrP 12.2(a). Once the examination is conducted, the trial court is to "promptly hold a hearing to determine the defendant's competency." MRCrP 12.5(a). "The burden of proof rests on the defendant to prove that he is mentally incompetent to stand trial." ***Moore v. State***, 287 So. 3d 189, 196 (Miss. 2020) (internal quotation marks omitted) (quoting ***Evans v. State***, 226 So. 3d 1, 14 (Miss. 2017)).

¶18. Initially, the trial court found that there were reasonable grounds to question Sandoval's mental competency to stand trial, and it ordered that Sandoval be evaluated. After Sandoval was evaluated over a period of a year, a competency hearing was conducted. The

State provided the uncontradicted testimony of Drs. Collins and McMichael, both of whom agreed and opined to a reasonable degree of psychiatric certainty that Sandoval was competent to stand trial.

¶19.    Sandoval, who offered no testimony at the competency hearing, argues that Collins's and McMichael's opinions are not reliable because they did not consider a diagnosis of dissociative amnesia. However, his argument is contradictory with their findings. Collins testified that Sandoval's symptoms were inconsistent with that diagnosis. Dr. McMichael testified that he considered a diagnosis of dissociative amnesia but could not diagnose the condition because of Sandoval's behavior. Furthermore, Sandoval's uncooperative behavior did not lend itself to additional testing. Testimony adduced at the competency hearing concluded that Sandoval was malingering and that he was not genuinely suffering from dissociative amnesia.

¶20.    Having reviewed Sandoval's extensive medical history, beginning with his episode on the courthouse stairs, coupled with their observation of Sandoval for fifty-two days at Whitfield, Collins and McMichael were unanimous in their determination that Sandoval was competent to stand trial and that he was malingering cognitive impairments and memory-related deficits. Neither Collins nor McMichael wavered from their opinions that Sandoval had the ability to perceive and understand the proceedings, to communicate rationally with his attorney about his case, to recall relevant facts, and to testify in his defense. *See* MRCrP 12.l (a). Their testimony was unrebutted. "The burden of proof rests on the defendant to prove that he is mentally incompetent to stand trial." ***Moore***, 287 So. 3d at

9

196 (internal quotation marks omitted) (quoting *Evans*, 226 So. 3d at 14).

¶21. Based on the evidence, including the unrefuted testimony of Collins and McMichael, the trial court determined that Sandoval was competent to stand trial. We find that the trial court's ruling was supported by the overwhelming weight of the evidence and was not "manifestly against the overwhelming weight of the evidence." *Dickerson*, 175 So. 3d at 15 (internal quotation marks omitted) (quoting *Hearn*, 3 So. 3d at 728).

## CONCLUSION

¶22. The trial court did not err by finding Sandoval competent. Sandoval's convictions and sentences are affirmed.

¶23. **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**